# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| NATIONAL CONSUMER LAW CENTER, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. _____ ) |
| ANDREW SAUL, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) ) |
| Defendant. | ) ) ) |

## COMPLAINT

1. Plaintiff National Consumer Law Center brings this action against Defendant the United States Social Security Administration to compel compliance with the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and alleges as follows:

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

3. Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

1

## PARTIES

4.    Plaintiff National Consumer Law Center (NCLC), a non-profit corporation founded in in Massachusetts in 1969, assists consumers, advocates, and public policymakers nationwide who use the powerful and complex tools of consumer law to ensure justice and fair treatment for all, particularly those whose poverty renders them powerless to demand accountability. NCLC regularly issues reports, books, and newsletters on consumer issues, including fair credit reporting, which are distributed to consumers, lawyers, academics, and other interested parties. NCLC's principal place of business is located at 7 Winthrop Square, Boston, Massachusetts 02110-1245.

5.    Defendant Andrew Saul is the current Commissioner of the Social Security Administration (SSA). SSA is a federal agency within the meaning of FOIA, *see* 5 U.S.C. § 552(f)(1), and has possession, custody, and control of the records Plaintiff seeks.

## FACTS

**Background**

6.    Beginning in early 2018, SSA began to use the Accurint database sold by LexisNexis to determine whether recipients of needs-based government assistance might own unreported real property that would disqualify them from the receipt of such benefits.

7.     Specifically, SSA implemented a "non-home real property" verification process. Recipients of Supplemental Security Income (SSI) are permitted to own the home where they reside; other real property they own is counted as a resource and is potentially disqualifying, depending on its value.

8.     Since the advent of SSA's use of the Accurint product, advocates representing SSI recipients have reported significant problems with false matches – real property coming up in the Accurint search that has no true connection to the benefits recipient. People who rely on SSI to survive have received letters from SSA notifying them of a suspension or alleged overpayment based on supposedly owning real property, often in states that they have never lived in or even visited.

9.     Often the suspension or overpayment letter does not even identify the alleged real property at issue; it simply states, "real property" and lists a purported value of the property. Vulnerable SSI recipients, who are by definition either disabled or elderly and extremely low income, must attempt to disprove the allegation that they own the real property to the satisfaction of the employees in their local SSA office.

10.    Moreover, SSI recipients improperly "matched" with non-home real property through an Accurint search may suffer a discontinuation of their benefits or an offset for alleged overpayment during that appeal process, depending on the timing of their appeal.

**NCLC's FOIA Request**

11. On September 19, 2019, Plaintiff sent a FOIA request (Request) to SSA via U.S. mail seeking the release of records including contracts, agreements, manuals, policies, procedures, studies, assessments, audits, complaints, and any other documents related to SSA's use of LexisNexis data and access, including Accurint access. Ex. A at 1–2.

12. In connection with this Request, NCLC requested that all fees be waived, because disclosure of the requested information would be in the public interest. Specifically, the Request explained that the requested information would contribute to public understanding of the use of external data by SSA, and in particular, the accuracy of such data and the safeguards involved in its use by SSA.

13. NCLC explained in the Request that it intended to use the information obtained to publish a report regarding SSA's use of the Accurint database and disseminate the report broadly to the public.

14. On September 27, 2019, SSA acknowledged receipt of the Request and assigned it the tracking number SSA-2019-003822.

15. On December 27, 2019, SSA denied NCLC's request for a fee waiver.

16. On January 13, 2020, NCLC appealed SSA's denial of the fee waiver.

17. On March 18, 2020, SSA denied NCLC's appeal of the fee waiver.

18. On March 27, 2020, NCLC submitted a payment authorization form to pay the fee estimated by SSA, in order to obtain the requested documents without further delay. NCLC submitted the payment authorization form under protest and reserved the right to challenge the denial of the fee waiver.

19. After receipt of payment authorization form, SSA did not provide any documents sought in the Request within thirty working days of the payment authorization.

20. On May 22, 2020, in response to NCLC's email request for a status update, SSA informed NCLC in an email with the subject line "Status Update for FOIA Request SSA-2019-003822" that the FOIA officer was "still pending responsive records from one of SSA's components," and that their goal was to have the "case closed by the end of June if not sooner."

21. On July 14, 2020, NCLC sent another request for a status update via email to SSA, noting that SSA had not produced any documents by the end of June.

22. On July 17, 2020, SSA responded, "We are currently reviewing the responsive records for your case. Our goal is to have your case closed by the end of July."

23. On August 20, 2020, NCLC sent another request for a status update via email to SSA, noting that SSA had not produced any documents by the end of July.

24. On September 4, 2020, Lauren Kline of SSA responded to NCLC via phone regarding documents that SSA was prepared to provide. Ms. Kline promised to send an initial production of documents within the next week.

25. On September 11, 2020, NCLC sent another request for a status update via email to SSA, requesting the promised initial production of documents.

26. On September 25, 2020, SSA released an interim response (Interim Response Letter) consisting of 5 pages of contract documents allegedly pertaining to Item 1 of NCLC's Request, which is for "Contracts and/or agreements between the Social Security Administration (SSA) and LexisNexis including the contract related to use of Accurint."

27. SSA stated that portions of the contracts were withheld under FOIA Exemption 4, which protects trade secrets and privileged or confidential financial or commercial information that might cause "competitive disadvantages" if disclosed.

28. Portions of the contracts were also withheld under FOIA Exemption 6, which protects personal information about named individuals that does not "shed light on how the agency performs its statutory duties."

29. SSA did not provide any description of the withheld documents or any explanation as to why they are purportedly covered by Exemptions 4 and 6.

30. The Interim Response Letter also purported to provide some information pertaining to Item 3 of NCLC's request, which is for "SSA Program Operations Manual Systems [POMS] which relate to or mention the SSA's use of LexisNexis data." In particular, the Interim Response Letter stated that NCLC could find "[s]ome of the POMS pertaining to Item 3" on SSA's website, available to the public at https://secure.ssa.gov/apps10/poms.nsf/partlist. SSA listed 11 sections of the POMS manual that "may be helpful." This was not a complete response, as SSA acknowledged in its Interim Response Letter.

31. Of the eleven POMS sections that SSA claimed "may be helpful," seven sections are completely irrelevant to the Request. These include sections of the POMS manual on selecting a qualified representative payee (GN 00502.132), interviewing the payee applicant (GN 00502.113), processing of administrative fees (GN 03930.091), validity of adoption under Louisiana law (PR 01310.021 and PR 01315.021), common law marriage in Utah (PR 02720.049), and recognition of marriage performed by Chippewa Indians (PR 05905.055).

32. Three additional sections of the POMS manual identified in the Interim Response are tangentially relevant, as they pertain to verifying information payee applicants provide, though not apparently through the Accurint database (GN 00502.117); documenting overpayments (SI 02220.005); and handling overpayments (SI 02220.051).

33. Only one of the eleven POMS sections identified in the Interim Response relates substantially to the Request – section SI 01140.100, regarding non-home real property. Even that section does not mention the Accurint program or describe its use.

34. There are additional, non-public sections of the POMS manual that describe and relate to SSA's use of the Accurint database that are within the scope of NCLC's Request. SSA did not provide—or indicate that it would provide in a subsequent release—those sections of the POMS manual, despite the fact that they are responsive, not covered by any exemption, and have been produced previously by SSA in response to a FOIA request.

35. The Interim Response Letter also stated: "We will respond to the remaining items of your request in a subsequent response." As of the filing of this complaint, NCLC has received no further correspondence from SSA.

36. SSA was required to make and communicate to NCLC its determination as to NCLC's Request within twenty working days of receiving the Request. 5 U.S.C. § 552(a)(6)(A)(i). If "unusual circumstances" applied, SSA would have had 30 working days to make and communicate this determination. *Id.* § 552(a)(6)(B). SSA was then required to make the records "promptly available." *Id.* § 552(a)(3)(A), (a)(6)(C)(i).

37. To date, fourteen months after receipt of NCLC's Request, SSA has only produced 5 pages of responsive documents.

38. SSA has not provided all responsive documents, by its own admission, and has improperly withheld responsive documents.

39. SSA improperly invoked Exemptions 4 and 6 in redacting certain portions of the one document it has provided. SSA has not provided a sufficient description of the redacted content to allow for a determination as to whether the exemptions apply. NCLC challenges the claimed exemptions.

40. SSA has not communicated the scope of the documents it intends to produce and withhold or provided a timeline as to when further documents are forthcoming.

41. SSA has failed to issue a final determination about whether it will comply with NCLC's request and has failed to release all requested, non-exempt records.

## FIRST CAUSE OF ACTION
### (FOIA – Failure to Conduct an Adequate Search for Records)

42. Plaintiff re-alleges and re-pleads all the allegations of the preceding and subsequent paragraphs of this Complaint and incorporate them herein by reference.

43. Pursuant to 5 U.S.C. § 552(a)(6)(C)(i), NCLC has exhausted all administrative remedies with respect to this FOIA request.

44. NCLC has a statutory right under FOIA, 5 U.S.C. § 552(a)(3)(C), to an adequate search for the records it requested and to the release of any non-exempt

records identified in that adequate search. No legal basis exists for SSA's failure to search adequately for the records NCLC seeks.

## SECOND CAUSE OF ACTION
### (FOIA – Failure to Disclose Responsive Records)

45. Plaintiff re-alleges and re-pleads all the allegations of the preceding and subsequent paragraphs of this Complaint and incorporate them herein by reference.

46. Pursuant to 5 U.S.C. § 552(a)(6)(C)(i), NCLC has exhausted all administrative remedies with respect to this FOIA request.

47. NCLC has a statutory right under FOIA, 5 U.S.C. § 552(a)(3)(A), to the records it requested, and there is no legal basis for SSA's failure to disclose the unproduced records in full.

48. FOIA also requires agencies to release "[a]ny reasonably segregable portion of a record," 5 U.S.C. § 552(b), and SSA has failed to fulfill its obligation to properly segregate the record.

49. SSA improperly invoked Exemptions 4 and 6 in redacting certain portions of the one document it has provided. SSA has not provided a sufficient description of the redacted content to allow for a determination as to whether the exemptions apply. NCLC challenges the claimed exemptions.

## THIRD CAUSE OF ACTION
### (Denial of Fee Waiver, 20 C.F.R. § 402.185)

50. Plaintiff re-alleges and re-pleads all the allegations of the preceding and

subsequent paragraphs of this Complaint and incorporate them herein by reference.

51.     Pursuant to 5 U.S.C. § 552(a)(6)(C)(i), NCLC has exhausted all administrative remedies with respect to this FOIA request.

52.     SSA improperly denied NCLC's fee waiver request. NCLC meets the criteria for a fee waiver under 20 C.F.R. § 402.185.

53.     As explained in the Request and fee waiver appeal, NCLC intends to analyze the disclosed information and disseminate the information produced as a result of this FOIA request to a broad segment of the interested public. NCLC has published numerous reports regarding data collection and consumer reports. Our reports garner significant web traffic and are often covered in articles published by the national news media. As is shown by our prior track record, NCLC has the demonstrated capacity to disseminate this information broadly.

54.     Disclosure will likely contribute significantly to such public understanding. The information requested will help consumers, community organizations, and policymakers determine exactly which issues may need to be addressed with regard to SSA's policy. The public's understanding of the subject matter in question is currently very limited, as very little information is publicly available. The public's understanding of SSA's operations with respect to the Accurint product's use in eligibility determinations, and related accuracy safeguards, will be significantly enhanced by the disclosure.

55. NCLC has no commercial interest in the subject matter of this request. The organization's intended purpose for soliciting the information is not related to "business, trade, or profit." *See* 20 C.F.R. § 402.185. NCLC intends to use the requested information to publish a report regarding SSA's use of the Accurint program. NCLC is not being paid to produce the report and does not expect to generate a profit by producing the report. The purpose of creating the report is to advance public dialogue regarding SSA's use of the Accurint product and the accuracy standards of the reports generated by Accurint.

56. NCLC seeks the information for "news dissemination purposes," which are not treated as commercial purposes. NCLC qualifies as "representative[s] of the news media" because it is actively gathering news in order to publish or broadcast news to the public, where "news" is defined as "information that is about current events or that would be of current interest to the public." 5 U.S.C. § 552(a)(4)(A)(ii)(III); *see also* 20 C.F.R. § 402.185(c)(1).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

(a) Declare that SSA has violated FOIA, by its failure to timely respond to NCLC's Request and its failure to make the requested records promptly available;

(b) Order SSA, by a date certain, to make the requested records available to

NCLC at no cost, and to reimburse NCLC for any amounts it might have been charged pursuant to the credit card authorization form previously provided;

(c) Order SSA to provide, by a date certain, an index justifying the withholding—in full or in part—of any responsive records withheld under a claim of exemption.

(d) Retain jurisdiction over this case to monitor SSA compliance with any court orders and to rule on any assertions by SSA that any responsive records held by SSA are, in whole or in part, exempt from disclosure;

(e) Award NCLC its costs and reasonable attorneys' fees pursuant to 5 U.S.C. § 552(a)(4)(E); and

(f) Grant such other and further relief as this Court may deem just and proper.

Dated: December 18th, 2020

Respectfully submitted,

/s/ Stuart T. Rossman
Stuart T. Rossman (B.B.O. #430640)

**NATIONAL CONSUMER LAW CENTER**
7 Winthrop Square
Boston, MA 02110
Tel: (617) 542-8010
srossman@nclc.org